## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

BROWN & ROOT INDUSTRIAL
SERVICES, LLC, ET AL.

CIVIL ACTION

VERSUS

JAESON M. BROWN, ET AL.

NO. 21-00291-BAJ-SDJ

### RULING AND ORDER

This is a trade secrets case. Now before the Court is the **Motion To Dismiss Plaintiff Brown & Root Industrial's Breach Of Fiduciary Duty Claims Against The Individual Defendants, Except Andy Farris (Doc. 109, the "Fiduciary Breach Motion")**, filed by Defendants Jaeson M. Brown, Daniel G. Farris, Michael P. Farris, Jeffrey M. Hebert, Robert A. Huval, Mitchell L. Morgan, David E. Sterken, and Kevin D. Steed (*hereinafter*, the "Moving Defendants"). Also before the Court is the **Partial Motion To Dismiss Defendants' Counterclaims (Doc. 174, the "Counterclaims Motion")**, filed by Plaintiffs Brown & Root Industrial Services, LLC (Brown & Root) and BRIS Engineering, LLC (BRIS), as well as Counterclaim Defendants Andy Dupuy, Fred McManus, and Grant Landry. Both Motions are opposed. (Docs. 124, 230). For the reasons that follow, the Fiduciary Breach Motion will be granted, and the Counterclaims Motion will be granted in part.

### I.   BACKGROUND

Brown & Root is a Delaware limited liability company with its principal place of business in Baton Rouge, Louisiana. (Doc. 24 ¶ 1). BRIS is a Louisiana limited

liability company with its principal place of business in Baton Rouge. (*Id.* ¶ 2). BRIS is a wholly owned subsidiary of Brown & Root. (*Id.* ¶ 19). Generally, Plaintiffs allege that the individual Defendants left jobs at BRIS—and that Defendant Andy Farris left his job at Brown & Root—to work for Defendant Fides Consulting, LLC, and that those Defendants have disclosed and used BRIS' trade secrets in the course of that work for Fides. (*See id.*).

While the individual Defendants were employed by BRIS, Brown & Root and BRIS "adopted a Dispute Resolution Program [(DPR)] and required as a condition of continued at-will employment that certain legal disputes, not otherwise resolved, be submitted to confidential and binding arbitration, rather than the court system." (Doc. 161 at 42). The individual Defendants were subject to the DPR. (*Id.*). Additionally, while Andy Farris was an employee of Brown & Root, his employment agreements contained binding arbitration clauses. (*Id.*).

In March 2021, in response to the alleged misappropriation of its trade secrets, Brown & Root sued Andy Farris, Kevin Steed, and Fides in the Nineteenth Judicial District Court for the Parish of East Baton Rouge, Louisiana, seeking a temporary restraining order (TRO). (*Id.* at 43). A TRO was issued, but expired soon after and was not renewed. (*Id.* at 43–44). In June 2021, Brown & Root abandoned its lawsuit in state court, and the lawsuit was dismissed. (*Id.* at 44).

In May 2021, Brown & Root filed a Complaint for Injunctive Relief and Damages in this Court, alleging trade secrets violations under federal and state law and various state law claims. In September 2021, Brown & Root filed its First

Amended Complaint (FAC). (Doc. 24). Among the state law claims filed by both Brown & Root and BRIS is a claim for breach of fiduciary duty. (Doc. 24 ¶¶ 148–154). In their Complaint and FAC, Plaintiffs assert that they are "entitled to temporary and permanent injunctive relief" against all Defendants, (*id.* at 44), but have never moved for a temporary restraining order or preliminary injunction in a separate motion pursuant to Court's Local Rule 65.

In November 2022, Defendants answered the FAC and asserted numerous Counterclaims, (Doc. 62), which were supplemented in July 2023 with additional counterclaims and additional Counterclaim Defendants, (Doc. 161). Relevant here, Defendants assert state law counterclaims for breach of contract, abuse of process, Louisiana tort, invasion of privacy, unfair trade practices, defamation, and civil conspiracy. (*See id.*). All of these counterclaims, save one of the invasion of privacy claims, are related to the very fact that Plaintiffs filed this lawsuit in the first place. (*Id.*). Counterclaim Defendants are Brown & Root, BRIS, and Dupuy, McManus, and Landry. During the period alleged in the Counterclaims, Dupuy was the President and Chief Executive Officer (CEO) of Brown & Root; McManus was the Chief Operating Officer (COO) of Brown & Root; and Landry was the President of BRIS. (Doc. 161 at 39). Defendants allege that as COO, "McManus has been responsible for the operations of the Brown & Root business organizations, including but not limited to BRIS Engineering whose equity, membership interest was acquired by Brown & Root Industrial in 2015." (*Id.* at 39). Kevin Steed also asserts an invasion of privacy

claim against Landry and BRIS, alleging that Landry sent "off-color, offensive texts from an email address" belonging to Steed. (*Id.* at 54–55).

In the Fiduciary Breach Motion, the Moving Defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(6) of the claim for breach of fiduciary duty made by Brown & Root. (Doc. 109).

In the Counterclaims Motion, Plaintiffs and Counterclaim Defendants seek dismissal under Rule 12(b)(6) of Defendants' counterclaims for breach of contract, abuse of process, Louisiana tort, both claims for invasion of privacy, unfair trade practices, defamation, and civil conspiracy.

## II.    LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Proc. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). When conducting its inquiry,

the Court must "accept[ ] all well-pleaded facts as true and view[ ] those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010) (quotation marks omitted).

## III.  DISCUSSION

### a. Fiduciary Breach Motion (Doc. 109)

Moving Defendants seek to dismiss Brown & Root's claim for breach of fiduciary duty, arguing that they owed no such duty to Brown & Root because they were never its employees. (*See* Doc. 109-2 at 3). The Court agrees.

Louisiana law recognizes that an employee may owe a fiduciary duty to their employer. *See Schott, Tr. for Est. of InforMD, LLC v. Massengale*, No. CV 18-759, 2019 WL 4741811, at *9 (M.D. La. Sept. 27, 2019). Louisiana courts have found a breach of an employee's fiduciary duty to his employer "when an employee has engaged in dishonest behavior or unfair trade practices for the purpose of his own financial or commercial benefit." *Id.* (citing *Harrison v. CD Consulting, Inc.*, 2005-1087 (La. App. 1 Cir. 5/5/06), 934 So. 2d 166, 170).

Here, however, the Moving Defendants were employees of BRIS, not Brown & Root, and therefore any fiduciary duty owed would be owed to BRIS, not Brown & Root. Plaintiffs' conclusory opposition cites no authority to the contrary. (*See* Doc. 124).

For this reason, Brown & Root's claim for breach of fiduciary duty against the Moving Defendants will be dismissed with prejudice. Brown & Root's fiduciary breach claim against Andy Farris, who does not join the Moving Defendants, survives

because he was employed by Brown & Root, and therefore theoretically could have owed it a fiduciary duty.

### b. Counterclaim Motion (Doc. 174)

Plaintiffs and Counterclaim Defendants (collectively, Counterclaim Defendants) move to dismiss all of Defendants' (Counterclaim Plaintiffs) counterclaims. The Court will address each claim in turn.

### i. Breach of Contract

Counterclaim Plaintiffs' breach of contract counterclaim alleges that the Counterclaim Defendants breached the DRP by filing lawsuits in state and federal court instead of submitting the matter to arbitration. Counterclaim Defendants argue that the counterclaim fails because the DRP allows them to "seek temporary relief (including temporary restraining orders and preliminary injunctions)," which, they argue, is exactly what they sought here and in state court. The Court disagrees.

In Louisiana, the elements of a cause of action for breach of contract are: "(1) the obligor's undertaking of an obligation to perform (the contract), (2) the obligor failed to perform the obligation (the breach), and (3) the failure to perform resulted in damages to the obligee." *JMF Med., LLC v. Team Health, LLC*, 490 F. Supp. 3d 947, 973 (M.D. La. 2020) (citing *Denham Homes, L.L.C. v. Teche Federal Bank*, 14-1576 (La. App. 1st Cir. 9/18/15), 182 So. 3d 108, 118).

Here, the DRP provides that "[i]f an employee accepts or continues employment with any Brown & Root company, the employee and Brown and Root thereby agree to all provisions of the DRP." (Doc. 174-2 at 13). One of those provisions

is "the requirement that any legal dispute . . . not resolved [through informal means set forth in the DRP] be submitted to final and binding arbitration rather than to a jury or through the courts." (*Id.*). The DRP warns employees that "[i]f . . . you file a law-suit [sic] involving a dispute that is subject to arbitration, Brown & Root attorneys will go before the judge, tell him or her about the DRP, and ask that the aspects of the lawsuit that are subject to the arbitration be dismissed." (*Id.* at 16). The parties do not dispute that the DRP is a contract under Louisiana law and that it covers the counterclaims raised here.

The DRP also provides that notwithstanding its general requirements, "any Party may seek temporary relief (including temporary restraining orders and preliminary injunctions) from a court of competent jurisdiction if the necessary legal and equitable requirements under applicable law are met." (*Id.* at 21).

Counterclaim Defendants argue that this exception clause covers their lawsuit in this Court and in state court. In state court, Brown & Root did obtain a temporary restraining order (TRO) against Defendants Andy Farris, Steed, and Fides. Although the TRO expired after ten days and Brown & Root never sought to renew it, the lawsuit was dismissed soon after. The Court finds that the state court action was covered by the exception to the DRP. *See Archer & White Sales, Inc. v. Henry Schein, Inc.*, 935 F.3d 274, 283 (5th Cir. 2019) (holding that exception to arbitration clause for "actions seeking injunctive relief" was met by a lawsuit seeking injunctive relief, among other remedies).

In this Court, however, although the Complaint and FAC mention temporary injunctive relief, (*see* Doc. 24 at 38, 41, 44), Counterclaim Defendants have never moved for a TRO or preliminary injunction in accordance with the Court's Local Rules. Local Rule 65 provides that "[a]n application or a motion for a temporary restraining order or for a preliminary injunction shall be made in a document separate from the complaint and if not, may not be considered by the Court." Because Counterclaim Defendants merely mention temporary injunctive relief and have never taken any steps to *actually obtain it*, the Court finds that the exception to the DRP does not apply to this action. In other words, in the DRP's own words, the "necessary legal and equitable requirements under applicable law" were not "met." (Doc. 174-2 at 21).

The U.S. Court of Appeals for the Fifth Circuit's opinion in *Archer* is instructive here. 935 F.3d at 283. There, an action seeking injunctive relief satisfied an exception to an arbitration clause that allowed lawsuits "seeking injunctive relief." *Id.* Here, in contrast, the exception is narrower, and only allows a party to "seek temporary relief (including temporary restraining orders and preliminary injunctions)." (Doc. 174-2 at 13). Unlike in *Archer*, the Counterclaim Defendants have not actually *sought* temporary relief, because they have made no attempt to obtain it through either a separate motion for a TRO, a preliminary injunction, or both. As such, the Court finds that the exception to the arbitration clause does not apply to Counterclaim Defendants lawsuit, Counterclaim Plaintiffs' have plausibly alleged

that Counterclaim Defendant breached that clause by filing this lawsuit, and therefore Counterclaim Plaintiffs' breach of contract counterclaim survives.

Counterclaim Defendants raise numerous arguments in their Reply in support of the Counterclaim Motion that were not raised in the Counterclaim Motion. (*See* Doc. 243 at 2).[1] "Arguments raised for the first time in a reply brief are generally waived." *Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010) (citing *Iteld, Bernstein & Assocs., LLC v. Hanover Ins. Group,* 2009 WL 2496552, at *4 (E.D. La. Aug. 12, 2009)). Nothing about these newly raised arguments suggests that they could not have been raised in the initial motion, and Counterclaim Defendants make no argument to suggest otherwise. These arguments are therefore waived, and the Court will not address them. *See United States v. Ayika*, No. EP-09-CR-660, 2014 WL 1237478, at *2 (W.D. Tex. Mar. 25, 2014), *aff'd*, 584 F. App'x 239 (5th Cir. 2014) ("The court will not address arguments asserted for the first time in Defendant's Reply, which were not raised in previous motions before this court.").[2]

---

[1] One of these arguments is the surprising assertion that the DRP does not apply here because "an employee did not file suit against Plaintiffs to trigger [it]." (Doc. 243 at 2). In other words, Brown & Root and the other Counterclaim Defendants are arguing that *only* claims by employees against an employer are subject to the DRP—a one-way arbitration street. This argument is wrong based on the plain language of the DRP, (*see* Doc. 274-2 at 19 ("[The DRP] is designed to provide a program for the . . . resolution of all Disputes . . . between the Company and the Company's present and former Employees.")), and it also suggests a frank disdain for an employer's obligations with respect to the contracts it enters with its own employees.

[2] The Court notes that arguments made in support of other counterclaims suggest that the DRP may not be a contract that can be breached in the first place. (*See* Doc. 230 at 14–15 ("There is no evidence . . . that any individual Counterclaim Plaintiff signed the DRP.")). Counterclaim Defendants, however, have not raised whether the DRP is a valid contract, and the Court will not address arguments not raised.

### ii.  Abuse of Process

Counterclaim Plaintiffs allege that Counterclaim Defendants committed an abuse of process by filing lawsuits in state court and federal court instead of submitting the issues to arbitration. Several arguments are raised in support of dismissal.

### 1.  Whether the counterclaim is prescribed

Counterclaim Defendants first argue that Counterclaim Plaintiffs' abuse of process counterclaim is prescribed under La. C.C. art. 2315, which provides for a prescriptive period of one year for torts. (Doc. 274-4 at 7). Counterclaim Plaintiffs respond that the counterclaim is instead governed by La. R.S. 12:1502, which provides that actions against "persons who control business organizations" that are "formed under the laws of [Louisiana]" are subject to a two-year prescription period. La. R.S. 12:1502(D).

The lawsuits in state and federal court that form the basis of the abuse of process counterclaim were filed in March and May 2021, respectively. BRIS was added as a Plaintiff to the lawsuit in this Court in September 2021. The first Counterclaims were filed in November 2022, more than one year but less than two years later. Counterclaim Defendants Dupuy, Landry, and McManus were proposed as additional Counterclaim Defendants in January 2023 when Counterclaim Plaintiffs moved to amend the counterclaims. (Doc. 88). Based on these dates, if the shorter prescriptive period applies, the abuse of process counterclaim is prescribed.

The two-year prescriptive period of Section 1502(D) applies to "all business organizations formed under the laws of [Louisiana] and shall be applicable to any actions against any officer, director, shareholder, member, manager, general partner, limited partner, managing partner, or other persons similarly situated." La. R.S. 12:1502(A). Additionally, the provisions of section 1502 only apply to actions against any of the above-quoted persons, and do not include actions against the entities themselves. La. R.S. 12:1502(D).

Aspects of this counterclaim can be quickly dispatched with. The counterclaim has been brought against Brown & Root and BRIS, which are entities, not persons. Because the two-year prescriptive period of 1502(D) only applies to actions against persons, the abuse of process counterclaim is prescribed with respect to Brown & Root and BRIS and will be dismissed.

The abuse of process counterclaim has also been asserted against Landry, the President of BRIS, Dupuy, the President and CEO of Brown & Root, and Fred McManus, the COO of Brown & Root. As described above, BRIS is a Louisiana limited liability company, and therefore its President, Landry, is subject to the two-year prescriptive period of 1502(D).

Moreover, 1502(D) applies to actions against officers, directors, etc. of any Louisiana company, and "other persons *similarly situated.*" La. R.S. 12:1502(D) (emphasis added). The law is also titled, "Actions against persons who control Business Organizations." La. R.S. 12:1502. Counterclaim Plaintiffs have alleged that McManus "has been responsible for the operations of the Brown & Root business

11

organizations, including but not limited to BRIS." (Doc. 161 at 39). At the motion-to-dismiss stage, reasonable inferences are drawn in favor of the plaintiff (or counterclaim plaintiff), and facts are viewed in the "light most favorable to the [counterclaim] plaintiff." *Bustos*, 599 F.3d at 461. Based on the allegation against McManus, Counterclaim Plaintiffs have sufficiently alleged that McManus controlled the operations of BRIS such that the abuse of process counterclaim against him is subject to the two-year prescriptive period of 1502(D).

Counterclaim Plaintiffs have made no such similar allegations against Dupuy, President and CEO of Brown & Root, and therefore he is not subject to the two-year prescriptive period because Brown & Root is a Delaware corporation and not subject to La. R.S. 12:1502. *See Hill v. TMR Expl., Inc.*, 2016-0566 (La. App. 1 Cir. 6/13/17), 223 So. 3d 556, 563, *writ denied*, 2017-1163 (La. 10/27/17), 228 So. 3d 1227 (finding that La. R.S. 12:1502 did not apply to the officer of a foreign corporation).

Counterclaim Plaintiffs argue, however, that they were not aware of Dupuy's involvement and potential liability until April 2022, when Dupuy was deposed, and January 2023, when the "insurers" were "disclosed." (Doc. 230 at 11). Because the Counterclaims were asserted less than one year later, in January 2023, this lack of knowledge could in theory save the counterclaim from prescription. *See In re Med. Rev. Panel for Claim of Moses*, 2000-2643 (La. 5/25/01), 788 So. 2d 1173, 1179 (describing that under the doctrine of *contra non valentem*, "prescription does not begin to accrue until the plaintiff should have discovered that he had a reasonable basis for pursuing a claim against a specific defendant"). To support their argument

for *contra non valentem*, however, Counterclaim Plaintiffs only cite generally to the entire Supplemental and Restated Answer, Affirmative and Other Defenses, and Counterclaims (Doc. 161)—a 58-page document. This failure to point to specific allegations supporting *contra non valentem* is fatal. Moreover, a review of that document reveals no mention of Dupuy's deposition in April 2022, the disclosure of insurers in January 2023, or, more importantly, why knowing this information was necessary for the counterclaim to be asserted against Dupuy. "The 12(b)(6) standard requires plaintiff to plead some facts that make the application of [the doctrine of *contra non valentum*] possible." *Dalrymple v. U.S. Postal Service*, 2020 WL 1181845, *6 (E.D. La. 3/12/20) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Counterclaim Plaintiffs have not done so here. Accordingly, the abuse of process counterclaim is prescribed as to Dupuy.

In sum, the Court finds that the abuse of process counterclaim is prescribed as to Brown & Root, BRIS, and Dupuy, but not prescribed as to Landry and McManus.

### 2. Whether a claim for abuse of process has been plausibly alleged

Counterclaim Defendants next argue that Counterclaim Plaintiffs have failed to state a claim for abuse of process.

"An abuse of process claim originates from the common law and is recognized in Louisiana as a compensable tort under La. C.C. art. 2315." *Panepinto v. Panepinto*, 23-297 (La. App. 5 Cir. 3/20/24), 384 So. 3d 1089, 1094, *writ denied*, 2024-00499 (La. 6/25/24), 386 So. 3d 1084. "An abuse of process claim has two essential elements: (1)

the existence of an ulterior purpose and (2) a willful act in the use of the process not proper in the regular prosecution of the proceeding." *Id.* Although in some states an abuse of process claim cannot be made where the alleged abuse is the mere filing of a lawsuit, *see, e.g., Moon v. Condere Corp.*, 690 So.2d 1191, 1197 (Miss. 1997), in Louisiana this is not the case, *see ENTU Auto Servs. Inc. v. PickMyRide.Biz LLC*, No. CIV. 6:15-1183, 2015 WL 6692144, at *5 (W.D. La. Oct. 5, 2015), *report and recommendation adopted*, No. CIV. 6:15-1183, 2015 WL 6736845 (W.D. La. Nov. 3, 2015) (declining to dismiss abuse of process claim premised on the filing of a lawsuit in the wrong venue to raise costs and compete with business); *Ratcliff v. Boydell*, 93-0362 (La. App. 4 Cir. 4/3/96), 674 So. 2d 272, 280–81, *as amended on reh'g* (May 31, 1996) (affirming judgment for abuse of process arising from the filing of multiple malicious lawsuits).

Here, the abuse of process counterclaim is based on Counterclaim Defendants' filing of this lawsuit and the state court lawsuit despite binding arbitration clauses covering the lawsuits' claims. (*See* Doc. 161 at 48). Counterclaim Defendants argue that neither lawsuit is improper because the arbitration clauses allowed parties to request temporary injunctive relief. (Doc. 174-4 at 9). But the Court has already ruled that the DRP could plausibly have applied to the Counterclaim Defendants' claims in this Court because no TRO or preliminary injunction was ever sought. *See Supra* Section III.b.i. For this reason and for the time being, the Court finds that Counterclaim Plaintiffs have plausibly alleged an abuse of process claim against Landry and McManus for the filing of claims subject to the DRP in federal court. *See*

14

*PickMyRide.Biz,* at *5; *Bank of New Orleans v. Phillips,* 415 So.2d 973, 975 (La. App. 4th Cir. 1982) (finding that plaintiff's intentional filing of a lawsuit in the wrong venue was tantamount to an abuse of process and served as harassment and an attempt to hinder access to the courts).

### iii. Louisiana Tort Counterclaim

Counterclaim Plaintiffs allege a general "Louisiana Tort" against all Counterclaim Defendants for "knowingly suppress[ing] the truth about obligations to confidentially arbitrate all claims." (Doc. 161 at 49). For the same reasons stated above with respect to the abuse of process counterclaim, this tort is prescribed as to Brown & Root, BRIS, and Dupuy, but not as to Landry and McManus.[3]

Counterclaim Plaintiffs frame this claim as one for "fraudulent omissions and misrepresentations," referring to the omission of the DRP's arbitration requirement from the lawsuit, among possibly other misrepresentations. Counterclaim Plaintiffs have notably failed, however, to describe who was misled by the alleged omissions. (Doc. 161 at 49). It cannot be the Counterclaim Plaintiffs themselves, who were parties to the DRP and aware of its existence. On the other hand, if the counterclaim is for a fraud or misrepresentation against the Court, Counterclaim Plaintiffs would have no standing to assert such a claim: they have not cited any authority supporting the proposition that a plaintiff can bring a claim for fraud committed against a third

---

[3] Counterclaim Plaintiffs make the additional argument here that the tort claim should be subject to Louisiana's ten-year prescriptive period for contract claims. (Doc. 230 at 12). But Counterclaim Plaintiffs cite no case law whatsoever in support of their argument that a counterclaim explicitly titled, "Louisiana Tort," arises not in tort but in contract. (*See id.*).

party under these circumstances. *See Diaz-Angarita v. Countrywide Home Loans Inc.*, No. CIV.A. H-13-2638, 2013 WL 5603468, at *3 (S.D. Tex. Oct. 11, 2013) (citing *Hernandez v. Vanderbilt Mortg. & Fin., Inc.*, No. CIV.A. C-10-67, 2010 WL 3359559, at *6 (S.D. Tex. Aug. 25, 2010)) ("A plaintiff lacks standing to assert a fraud claim based only on alleged misrepresentations to a third party."). Nor have they cited any case in which a party was subject to fraud or misrepresentation claims for failure to disclose information in a complaint initiating a lawsuit.

For these reasons, the "Louisiana Tort" counterclaim will be dismissed.

### iv. Invasion of Privacy Against All Counterclaim Defendants

Counterclaim Plaintiffs next allege invasion of privacy because, by filing the state and federal lawsuits "publicly," the Counterclaim Defendants "have invaded each [Counterclaim Plaintiffs'] privacy and violated the right to a private and confidential adjustment of differences." (Doc. 161 at 50). As far as the Court can tell, no such "right to a private and confidential adjustment of differences" exists, and Counterclaim Plaintiffs point to no caselaw or statute whatsoever demonstrating otherwise. Moreover, "Louisiana has never recognized that an invasion of privacy could occur merely by the filing of a lawsuit." *Kihneman v. Humble Oil & Ref. Co.*, 312 F. Supp. 34, 39 (E.D. La. 1970). Counterclaim Plaintiffs again cite no contrary authority. For these reasons, the invasion of privacy claim asserted against all Counterclaim Defendants will be dismissed.

### v. Unfair Trade Practices Counterclaim

Next, Counterclaim Plaintiffs allege a violation of the Louisiana Unfair Trade Practices Act (LUPTA), La. R.S. 51:401 *et seq.*, for the filing of the state and federal lawsuits. (Doc. 161 at 50–51). Claims for unfair trade practices under LUTPA are subject to a one-year prescriptive period. *See Carbon Six Barrels, LLC v. Proof Rsch., Inc.*, No. 22-CV-90, 2022 WL 16727127, at *8 (M.D. La. Nov. 4, 2022). Counterclaim Plaintiffs concede that this counterclaim is prescribed on its face but seek leave to amend the counterclaim to address why the doctrine *contra non valentum* applies. (Doc. 230 at 24). But "Louisiana courts have held that filing a lawsuit, even a meritless one, is not an unfair trade practice under LUTPA." *Carbon Six Barrels, LLC v. Proof Rsch., Inc.*, No. 22-CV-90, 2022 WL 16727127, at *8 (M.D. La. Nov. 4, 2022), *aff'd sub nom. Carbon Six Barrels, L.L.C. v. Proof Rsch., Inc.*, 83 F.4th 320 (5th Cir. 2023) (citing *GR Rests., LLC v. Suzanne Savoy Santillo, LLC*, 18-637 (La. App. 3 Cir. 06/12/19), 275 So. 3d 50, 61). Because the proposed amendment would not save the LUTPA counterclaim, Counterclaim Plaintiffs will not be granted leave to amend, and the LUTPA counterclaim will be dismissed with prejudice. *See, e.g., Perales v. Bank of Am., N.A.*, No. CIV.A. H-14-1791, 2014 WL 3907793, at *2 (S.D. Tex. Aug. 11, 2014) ("[A] plaintiff should be denied leave to amend a complaint if the court determines that the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face." (quotations omitted)).

### vi. Defamation Counterclaim

Counterclaim Plaintiffs next allege that the Counterclaim Defendants committed the tort of defamation for statements made about Counterclaim Plaintiffs in the state and federal court lawsuits. (Doc. 161 at 51–53). "Under Louisiana law a plaintiff must show four elements to prove defamation: (1) a false and defamatory statement concerning another; (2) an unprivileged communication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury." *Williams v. Town of Clinton*, No. CV 23-00119, 2024 WL 72645, at *4 (M.D. La. Jan. 5, 2024), *appeal dismissed sub nom. Williams v. Brown*, No. 24-30055, 2024 WL 3490520 (5th Cir. Jan. 31, 2024). "Louisiana courts have consistently held that an action for defamation arising out of allegations made in judicial proceedings and against a party to those proceedings cannot be brought until those proceedings are terminated." *Simpson v. Perry*, 2003-0116 (La. App. 1 Cir. 7/14/04), 887 So. 2d 14, 16 (citing cases). Counterclaim Plaintiffs argue that this rule only applies to defamation claims brought in separate lawsuits, not compulsory counterclaims, (Doc. 230 at 21), but they are simply incorrect. *See Loew's, Inc. v. Don George, Inc.*, 237 La. 132, 155, 110 So. 2d 553, 561 (1959) ("And it is also well settled in our jurisprudence that an action for defamatory allegations cannot be made the basis for damages by a reconventional[4] demand until the final termination of the main demand, and that

---

[4] Reconventional demand is defined as a plea by which a defendant asserts any claim that it has against the plaintiff, or any offset against the plaintiff's claim. This type of demand is similar to the common-law counterclaim. *Demand*, BLACK'S LAW DICTIONARY (12th ed. 2024).

such claims for damages are premature."). Because the proceedings from which the defamation counterclaims arise have not been terminated, the Court finds that the defamation counterclaim is premature, and it will be dismissed.[5]

### vii.  Civil Conspiracy Counterclaim

Counterclaim Plaintiffs allege that Counterclaim Defendants conspired to commit the above-described counterclaims. Counterclaim Defendants seek dismissal under the intra-corporate conspiracy doctrine, pursuant to which a corporation cannot conspire with itself any more than a private individual can, a corporation thus cannot conspire with its own subsidiary, officers, directors, employees, or agents. (Doc. 174-4 at 20 (citing *Ziglar v. Abbasi*, 582 U.S. 120, 153 (2017))).

The status of the intra-corporate conspiracy doctrine in Louisiana is unclear, and little caselaw exists on the question. *See Louisiana Power & Light Co. v. United Gas Pipe Line Co.*, 493 So. 2d 1149, 1160 (La. 1986) (approving intra-corporate conspiracies in antitrust actions and declining to follow U.S. Supreme Court precedent). But the Court need not resolve this thorny issue: the civil conspiracy claim fails because it has not alleged a conspiracy.

As an initial matter, Louisiana's civil conspiracy statute does not create an independent cause of action. *See, e.g., Crutcher-Tufts Res., Inc. v. Tufts*, 2007-1556

---

[5] This includes the defamation counterclaim arising from statements made in the now-dismissed state court lawsuit, which is premised on identical or substantially similar allegedly defamatory statements to the statements made in this lawsuit. Because the allegedly defamatory statements arising here have not been adjudicated, it does not make sense to proceed on the identical state court version of the same statements. In other words, the claims should be adjudicated on the merits before claims of defamation can be made.

(La. App. 4 Cir. 9/17/08), 992 So. 2d 1091, 1094. Rather, if a civil conspiracy exists, the members of that civil conspiracy are liable, *in solido*, with the other members of the conspiracy for the damage caused by their actions. La. Civ. Code art. 2324. While a conspiracy can be proven by circumstantial evidence, a plaintiff "must be able to prove that an agreement existed between the accused defendants to commit the illegal or tortious act which resulted in the plaintiff's injury," *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 526 (5th Cir. 2016) (citing *Kiva Constr. & Eng'g, Inc. v. Int'l Fidelity Ins. Co.*, 749 F.Supp. 753, 756 (W.D. La. 1990)). In other words, the plaintiff "is required to establish a meeting of the minds or collusion between the parties for the purpose of committing wrongdoing." *Thomas v. N. 40 Land Dev., Inc.*, 2004-0610 (La. App. 4 Cir. 1/26/05), 894 So. 2d 1160, 1174. Here, Counterclaim Plaintiffs allege that Counterclaim Defendants "concocted a plan to abuse process and misuse the litigation process to deny economic liberty, erect barriers to entry into the industrial engineering market, and to limit, delay, and/or eliminate Fides Consulting and the Individual Defendants from becoming a viable direct competitor." (Doc. 161 at 54). Apart from this high-flown language, Counterclaim Plaintiffs have utterly failed to allege *any* facts that would support their conclusory allegation. *See SnoWizard*, 833 F.3d at 526 (affirming dismissal of Louisiana civil conspiracy claims when no agreement between conspirators was alleged); *cf. Berry v. Indianapolis Life Ins. Co.*, 608 F. Supp. 2d 785, 794 (N.D. Tex. 2009) (dismissing conspiracy claim where no allegations suggested "that any acts took place in the context of, or as result of, some prior agreement among the . . . [d]efendants").

### viii. Steed's Invasion of Privacy Counterclaim Against Landry

Finally, Counterclaim Plaintiff Steed alleges that Landry and BRIS invaded Steed's privacy when Landry sent "off-color, offensive texts from an email address" that once belonged to Steed, several months after Steed had left his work at BRIS. (Doc. 161 at 47). For the same reasons stated above with respect to the abuse of process counterclaim, this tort is prescribed as to BRIS, but not as to Landry.

Invasion of privacy involves the basic right of a person to be left alone in their private affairs. *Walker-Jones v. Louisiana Ass'n of Educators*, No. CV 15-584, 2016 WL 1169473, at *2 (M.D. La. Mar. 22, 2016). An unwarranted invasion of a person's right of privacy may give rise to liability for the resulting harm. *Id.* The determination of whether a person's conduct constitutes the tort of invasion of privacy depends upon the facts and circumstances of each case. *Id.* To be actionable, a defendant's conduct must be unreasonable and must seriously interfere with the plaintiff's privacy interest. *Id.* (citing *Young v. St. Landry Parish School Board*, 95-1480 (La. App. 3 Cir. 5/1/96), 673 So.2d 1272, 1275).

Here, Steed's conclusory and vague allegation that Landry sent "off-color," and "offensive" texts from an email address that belonged to Steed fails to state a claim for invasion of privacy. (Doc. 161 at 55). In particular, Steed has failed to allege that Landry's action "seriously interefe[d]" with Steed's privacy interest. *Walker-Jones*, 2016 WL 1169473, at *2. Absent any further information regarding the nature and content of the texts, the Court cannot conclude that an invasion of privacy occurred

here. For these reasons, Steed's invasion of privacy counterclaim will be dismissed with prejudice.

IV.    CONCLUSION

Accordingly,

**IT IS ORDERED** that the **Motion To Dismiss Plaintiff Brown & Root Industrial's Breach Of Fiduciary Duty Claims Against The Individual Defendants, Except Andy Farris (Doc. 109)** be and is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff Brown & Root Industrial's claim for fiduciary breach against Defendants Jaeson M. Brown, Daniel G. Farris, Michael P. Farris, Jeffrey M. Hebert, Robert A. Huval, Mitchell L. Morgan, David E. Sterken, and Kevin D. Steed be and is hereby **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the **Partial Motion To Dismiss Defendants' Counterclaims (Doc. 174, the "Counterclaims Motion")**, filed by Plaintiffs and Counterclaim Defendants Andy Dupuy, Fred McManus, and Grant Landry be and is hereby **GRANTED IN PART**.

**IT IS FURTHER ORDERED** that Counterclaim Plaintiffs' state law claims for Louisiana Tort, invasion of privacy, unfair trade practices, and civil conspiracy, as well as Counterclaim Plaintiff Steed's separate invasion of privacy claim, be and are hereby **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Counterclaim Plaintiffs' abuse of process counterclaim against Defendants Brown & Root, BRIS, and Dupuy be and is hereby

**DISMISSED WITH PREJUDICE**. The abuse of process counterclaim against McManus and Landry survives.

     **IT IS FURTHER ORDERED** that Counterclaim Plaintiffs' state law claim for defamation be and is hereby **DISMISSED**.

     Baton Rouge, Louisiana, this 28th day of October, 2024

                    **JUDGE BRIAN A. JACKSON**
                    **UNITED STATES DISTRICT COURT**
                    **MIDDLE DISTRICT OF LOUISIANA**